Good morning, Your Honors. My name is Jenna Ellis Beyer, here for Petitioner Zheng. I would like to reserve two minutes of my time for rebuttal. I also want to acknowledge that while a petitioner could not be here physically today, she will be watching through the Court's website. Petitioner asked this Court to remand her case to the agency with instructions to reopen exclusion proceedings. Petitioner, a practicing Christian and mother of three children, filed a motion to reopen her exclusion proceedings based on deteriorated conditions in China for those who practice Christianity and those who deviate from the country's strict family planning regulations. Well, we don't have a lot of time and we've all read the brief, so I want to just jump in here on Ms. Zheng filed her motion to reopen approximately 15 years after the initial order of removal and approximately 11 years after she had her second child. Isn't this delay unreasonable? Your Honor, that's a great question. She filed her motion to reopen exclusion proceedings after the change in country conditions. If she had filed after the birth of her second child, that would be, as this case decided in he v. Gonzalez, merely a change in personal circumstances. However, she waited to file after a change in country conditions, which was evidenced by the government sending her a letter stating that she would be forced to sterilize, subject herself to sterilization if she returned. How did that letter come about all of a sudden in 2011 when she's living in the United States? The record is not clear as to the provenance of the record, but in the context of a motion to reopen, the facts asserted must be assumed to be true unless the agency finds them inherently unbelievable, which it did not in this case. So we have to assume that, I'm sorry, Your Honor, go ahead. Have you answered? So you don't know. Could I ask you, when does your client claim the country conditions as to the one-child policy changed? Her claim, Your Honor, is that the country conditions changed in 2010 and 2011 prior to the filing of her motion, which is supported by the difference that you see in the U.S. Department of State reports between 1995, which is included in the record in her prior proceedings, and the 2010 State Department report, which is provided in her motion to reopen. Was it 2010 or 2012? 2010 State Department, Your Honor. She filed the motion to reopen in late 2011. Well, I'm just, there's a skepticism in me that I just feel that I need to address here, that your client initially tried to get in with a false passport, claiming to be an American citizen, and I can't tell from the record as far as that goes, but that doing something, and it doesn't say anything in here, but it's sort of the elephant in the room, usually that makes you have a 15-year bar from being able to try to become a citizen. Does that play a factor in here? Is she barred? She's not barred from asylum, Your Honor, which is the relief that she's seeking. And is she barred from some, it's just like, there's certain things about your client that obviously she seems to be law-abiding, you know, there's evidence in the record that she's paying taxes, but then she did try to come in on a false passport, claiming that she was an American citizen. Does she have some sort of bar on her? Not for the relief that she's seeking. But on something? Does she have a bar for something? Is that why the government isn't? For example, you know, she was seeking to adjust her status through a different means, that might pose a problem, but not through this route. So the government isn't, hasn't indicated any willingness to work with her because of that? Is that, I mean, has anyone tried to ask the government if there's, is asylum her only way? Your Honor, as far as I'm aware, asylum is the relief that is available to her. I would also like to point out that when people are fleeing persecution and they're afraid, they'll do a lot of desperate things. And so it's, you know, of course she regrets now having presented a fake passport at the time, but she did what she felt she needed to do to escape harm when she was leaving China. Well, now, if she had presented, I think, assuming that she presented changed conditions in China, treatment of Christians, wasn't her motion properly denied on the basis that the evidence she presented was available at her initial immigration hearing in 1996? No, the evidence was not available, Your Honor. There are several critical pieces of evidence I would like to point your attention to. First is a letter from her aunt in 2011, that's at the administrative record, page 130, stating that the aunt, who's also a Christian, who had received religious materials from petitioner, was arrested by the authorities and beaten on account of receiving those materials. Also, if you look at the State Department report from 2010, it stands in stark contrast to the language used in the 1995 State Department report. And I'd like to just go ahead and read you from those reports. As to Christian persecution or as to the one-child policy? As to the Christian persecution, but I'm happy to address both. But with regards to Christians, the 1995 State Department says that the government views religion as a cultural phenomenon present in any society. The government generally tolerates the existence and activities of the unsanctioned churches, and individual worshipers are not harassed by the regime. And those are quotes. And then you compare that with the Department of State report in 2010, which says the criminal law defines banned groups as, quote, evil cults, and reports that individual worshipers have been imprisoned. So this is a change in tone, a change in attitude. And then there's specific and concrete evidence in the record about her own relative being persecuted on account of her religion. Didn't the immigration judge and the BIA evaluate that evidence and find it to be insufficient? They did evaluate that evidence. And do you think that we should say that it's sufficient as a matter of law? Don't we owe some deference to the evaluation of factual matters by the immigration authorities? Your Honor, in the context of a motion to reopen, the facts are not in dispute. So this is merely have they applied the correct legal standard to the facts? And the correct legal standard is if there's substantial evidence, we sustain the finding of the BIA unless the evidence is such that compels a contrary finding, correct? The evidence, if there is a qualitative change in the country conditions, then this court can overrule the board's finding, as it did in Malti, as it did in Saleem. Whether there's a qualitative difference depends on whether there's sufficient evidence of a qualitative difference. Correct. Yes. But I would assert there absolutely is a qualitative difference in the treatment of Christians between 1996 and 2011. What's her evidence? What is the evidence that China's treatment of multi-child mothers sufficiently changed over the period in question? And so how's the current picture that she paints of such treatment materially different than the one-child policy in 1997? In addition to the letter that I mentioned, which specifically states, Petitioner, we understand you to be in violation of our policies and would like you to submit to sterilization when you return. It's very bizarre that she gets a letter from China, what, 11 years later, and how would they even know she has children? Those are facts not in evidence, but we have to assume that the government means what it says when it says it intends to sterilize her. But I would also like to point you to the change in the State Department reports during the time in question. The 1995 State Department report says that Fujian officials described central and provincial regulations as flexible and suggested numerous exceptions to penalties. Is she from Fujian? She is, yes. She's from Fuzhou City. The consulate general reported that although many violators paid nominal fines, the post has seen no evidence of more draconian measures such as forced abortion or property confiscation. And when you compare that with the 2010 State Department report, it's a marked change. This is at the administrative record, page 473. Intense pressure to meet birth limitation targets set by government regulations resulted in instances of local family offices using physical coercion to meet government goals. So in the earlier report, there was no such evidence of draconian birth control measures, whereas in the 2010 report, there was. Does the 2010 report show any change for people who have had children outside of China? I'm not sure the answer to that question. I think I would like to reserve. Yes. Okay. Well, I anticipate if, depending on the questions that we have of the government, if we feel that we need more time to ask the questions, we will do so. Thank you. All right. We'll hear from the government now. If you could state your appearance. I don't know if the court would be interested in hearing a procedural summary that might aid in some of these issues and also addressing the 28J cases that have been put forward. Ms. O'Donnell, I'll tell you what I'm really interested in. I've read the BIA decision and I see no mention whatsoever of any consideration by the BIA as to the two State Department condition reports, 1995 condition report and the 2010 report. What I see is what I think is an over-reading of the He case, HE case, to say that the only thing that petitioner has shown is that she's had three children. I see a great deal of difference between the 1995 conditions evidence in the record and the 2010 evidence in the record. And I see that the evidence, the difference in the evidence shows that what has to be considered is, for instance, whether the alien resides in an urban or a rural area, rural area being looser enforcement, whether she's a member of a minority ethnic or a floating population, and what province she's from. I see none of those considerations in either the IJ or the BIA. So therefore, I think that an error of law may have been committed here by not considering the change between the two country conditions. Could you address that? Yes, Your Honor. In November of 1996, when the petitioner was ordered, she did not appeal that decision. And so it's never been transcribed. We don't know what the basis of the actual decision was. Well, she didn't have any children then either. But this is the element, because the final order came from the immigration court. She was required to go back to the immigration court to reopen. And so it's the immigration judge's decision that goes through the evidence, and the board is reviewing that and agreeing to much of it except for the departure bar. And so the immigration judge does recite he as saying that this is foreclosed. And a number of other Ninth Circuit cases subsequent to that in 2009, the Ninth Circuit came down with, let me make sure I get the name right, Ling, I think it was, or Jing. Ms. O'Donnell. Yes. I'm not concerned with whether the IJ recited he. I think he did. And so did the BIA. What I'm saying is that he was overread, that what they didn't assert, what they didn't consider at all was the different country conditions, 1995 and 2010. But I think that they did, Your Honor. I think the immigration judge did that, and did, and that the board said, we agree with the decision of the immigration judge. Point out to me where in the immigration judge's opinion, which I have before me, there is any consideration of the two cited and submitted immigration, pardon me, country condition standards. They do not go into it in detail, Your Honor. Not in detail. They don't go into it in summary or in mention. Your Honor, the issue is foreclosed by the presidential decisions of this court. They say that the court of U.S. citizens does not trigger. When have we ever said that it is immaterial to consider changed country conditions per the State Department reports? Well, let me address that. I do not think that there is a significant difference between the 1995 evidence in the record and the 2010 for this reason. Well, you don't think so. You don't think so, Miss O'Donnell. But what we need to do is to see whether the immigration judge and the BIA considered the evidence as to whether there was a difference. Are you saying that as a matter of law, there's no difference between 1995 and 2010 policies? What I'm saying is that a fair reading of the 2010 says that they're not talking about forced sterilization or abortion. What they're doing is using rewards and incentives to encourage people to keep to the birth limits, which are recognized not hardly at all. That's not the way I read it. That's what the 2010 report says. That's not the way I read the 2010 report. There are instances of physical coercion to cause forced abortions and sterilizations. Yes, that's the incentives, the financial incentives and penalties. The financial incentives to avoid physical coercion by having a sterilization. Yes, people are doing the report keeping within the limits. Let me ask you about Miss Zhang filed her motion to reopen approximately 15 years later after the initial order of removal. What is the significance, if any, of the length of that delay on whether Miss Zhang can establish the grounds for an exception to the 90-day time limitation for motions to reopen? Well, it certainly isn't reasonable if it's done so many years after the abortion. But can you point me to a case that says, I can say you weren't diligent or that you delayed? Actually, I cannot. But what I can point you to is in the record how she comes to the attention of INS or DHS again. And that's in 2008. She applies for work authorization. She has been off the radar since 1997 when she returned four months after her deportation. She goes to DHS and USCIS and seeks work authorization, alleging she has a pending adjustment of status application. USCIS did their due diligence and said, no, you don't. And they told her that she was attempting to obtain an immigration benefit through fraud or misrepresentation of a material fact. This is a regular refrain through her case. So this is what initiates her, I got to do something now. So she has to go back to the immigration court, reopen her case, put the evidence before that court, and then the board reviews it. And then it comes to you all on review. Well, the fact that she came in on a false passport, that's why she was deported and trying to be an American citizen. I'm curious, is she only eligible for asylum? Is that the only possible thing? Or is she eligible for anything else? She has a viable deportation order. I think that it can be reinstated, unless I'm mistaken. But there's the thing where there's a 15-year bar on people that is, do we know, did that happen on her or what happened? You don't know. When USCIS responded to her with that statement that she had committed fraud, they said, you are not eligible because you have been deported. You're not eligible for either work authorization or adjustment of status. Sometimes the department engages in some sort of mediation with people that have been law-abiding, have been here a long time, have citizen-born children, and any paid their taxes or anything. Does the government have any interest in that? Or has that ever been discussed? No, and it's not something DHS would consider in light of the recent executive orders. She is a priority for removal. Now, they may defer it. They may administratively close it, but that's strictly in their purview. By our standing, she committed a crime coming in. She committed a crime returning. She committed a crime by misrepresenting material facts in order to get an immigration benefit in 2008. So yeah, she may be paying her taxes, but she's not law-abiding, Your Honor. Ms. O'Donnell, you're not claiming that entry into this country without parole or permission is a crime, are you? I'm sorry, I couldn't hear you. My air conditioning turned off. Are you claiming that illegal entry into this country is a crime? Well, isn't that why it's called illegal entry, Your Honor? I don't mean to be smart, but we remove people all the time for that. It's a civil illegality. It is not a crime to enter into this country illegally. It's still not showing a respect for our law or our legal system. Take that up with Congress. It may be a crime to come back after you've been removed, I think. That's right. That's the 1326, but it's not a crime to come in here illegally. Anyway, we're taking it past our time. But it is a crime to come back after deportation. But she came back after she was removed. There is one other thing I'd like to bring up, if I can. And that's in the 2010 on country conditions. There was a very selective reading you received from counsel. The quote on page 393 of the record, since 2005, the government has publicly acknowledged that family and friends have the right to meet at home for worship, including Bible study, without registering with the government. And then at 392, there is a provision in the criminal law for China that allows the prosecution of government officials who violate anyone's religious freedom. And I'm over my time here. Well, I have a question, so I'm going to continue on that. Basically, on when this was handled, because she had the children after she came, and she converted to Christianity after she entered illegally. The determination was those are personal circumstances. They're not change country condition circumstances. But Chandra, it sort of changed the lens that you have to look through it. Is it possible that under Chandra, that she could make a showing? And that wasn't really analyzed here. Your Honor, Your Honor, one thing I'd like to know is... I'd just like you to answer my... I'd like you to answer my question. Well, I need to correct a fact. She did not convert after she came here. She, on her asylum application, says she converted in 1996. Okay. Which indicates that she was still in China. But the birth of the three children, not if there's no evidence that she will be persecuted for the birth. And the 1995, in the record, the asylum questionnaire, it reports that children born overseas to Chinese citizens returning to China, as long as they are U.S. citizens or citizens of another country, are not subject to penalty. They are not... The parents are not subjected to the one-child policy. They are welcomed back. It actually says that, that China welcomes back its returnees and their foreign-born children. What is your response to the letter that was put in the record? The letter is interesting, but it doesn't show a change in circumstances. It shows a snapshot in time. It doesn't tell us that conditions have changed from 95 to 96. And that's 2010. And that's true of the regulations sent by the Fuzhou, whoever the controlling authority is. He doesn't reference the fact... We don't know what the request was, if there was a request sent, and what the request explained. It doesn't... It's just a snapshot in time of what the regulations are. It doesn't show a change. And it doesn't show that there's been any consideration of the children's status as U.S. citizens. Okay. Thank you. You've answered my question. Okay. I'll give you two minutes for rebuttal. Ms. Byer, let me ask you a question, which was prompted by Ms. O'Donnell's citation of the 2010 conditions. Do you agree that regardless of the draconian measures that the Chinese government takes to multi-children families, they accept from those draconian measures if the children are indeed born in the United States and are American citizens? The evidence in the record includes a letter, which is addressed to petitioners saying, we understand that you have children in the United States, you are in violation of our policy, and we would like to sterilize you when you return. So the letter in and of itself could indicate a change in the government's position on children born outside of China. I would like to address Your Honor's question about Chandra,  The letter says you have three children born in the United States, The letter does not say that, Your Honor. It says you're in violation of such and such code. Do you have children? Correct. I would like to address Your Honor's point about the Chandra case, which is absolutely controlling here. Both the immigration judge and the BIA said that the birth of your children cannot be considered at all in the changed country conditions inquiry. And Chandra, as Your Honor points out, says no. If there's a changed country condition that is made relevant in light of a change in personal circumstance, the agency has to consider that. For that reason alone, this case has to be remanded. I would also like to address, the opposing counsel cited the case of Lynn, 2009, Ninth Circuit decision in which this court upheld the denial of a motion to reopen. But there, the Ninth Circuit was very specific to say, the agency did a detailed consideration of the evidence and gave enough information to this court to show that they had done a reasoned analysis and that they had thought and considered and not merely reacted. So it was a very different circumstance. The evidence was different, but also the agency really gave a lot more analysis as to why it was rejecting the claim. Here, we have essentially no analysis of why they believe the country conditions have not changed in a way that would be sufficient for the exception. I also want to address Your Honor's question about the length of the delay. So the statute at 8 U.S.C. 1229 a.c. 7 states there is no time limit on the filing of a motion to reopen if the basis of the motion is to apply for relief under asylum and it is based on changed country conditions. Well, if, okay, the changed country conditions alleviates the 90 days, but generally if, but our case law in terms of if you're seeking relief, say from the asylum bar, diligence is a factor. So there isn't anything, I don't think there's anything that supports your position or anything that supports the position. There isn't anything specifically, but. I would actually say that in the regulations interpreting the statute on motions to reopen, there's no reasonable requirement, reasonableness requirement imposed. Whereas by contrast, in the one-year context, those regulations say, yes, you can get around the one-year bar if you have changed country conditions or changed personal circumstances and it has to be filed within a reasonable time. So if the agency were to impose a reasonableness. All right, I understand your argument on that. We've allowed you to go additionally and thank you both for your argument.  Thank you, Your Honor.
judges: Callahan, Bea, Restani